1

2

3

4

5

6

7            IN THE UNITED STATES DISTRICT COURT

8          FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   SILVERLIT TOYS MANUFACTORY, LTD., a
     Hong Kong company; and SPIN MASTER          No. C 06-7966 CW
11   LTD., a Canadian corporation,
                                                 ORDER GRANTING IN
12              Plaintiffs,                       PART PLAINTIFFS'
                                                 MOTION FOR A
13        v.                                     PRELIMINARY
                                                 INJUNCTION AND
14   ABSOLUTE TOY MARKETING, INC., a Utah        DENYING DEFENDANTS'
     corporation, dba HOBBYTRON.COM; TIM         MOTION TO TRANSFER
15   GIBSON; and JIM ROYER,                      AND MOTION TO
                                                 DISMISS
16              Defendants.

17   _____/

18

19

20        Plaintiffs Silverlit Toys Manufactory, Ltd. (Silverlit) and

21   Spin Master Ltd. (Spin Master) move for a preliminary injunction.

22   Defendants Absolute Toy Marketing, Inc., d.b.a. HobbyTron.com, Tim

23   Gibson and Jim Royer oppose the motion and move to transfer this

24   case to the District of Utah or in the alternative to dismiss the

25   claims against Gibson and Royer for lack of personal jurisdiction.

26   Defendants oppose Plaintiffs' motion.  The matters were heard on

27   February 9, 2007.  Having considered all of the papers filed by the

28   parties, the evidence cited therein and oral argument on the

United States District Court
For the Northern District of California

motions, the Court grants in part Plaintiffs' motion for a
preliminary injunction and denies Defendants' motion to transfer or
dismiss.

BACKGROUND

Plaintiff Silverlit designs, manufactures, develops and
markets toys, including remote control toy helicopters.  Silverlit
has been the registered owner of the trademark "Silverlit" since
1992.  Among its products is a miniature remote control helicopter
called the Picoo Z, which Silverlit began distributing in 2006.
The helicopter was originally marketed both as the "Picoo Z" and
the "Hummingbird," but by the time it was marketed in the United
States, it was marketed as only the "Picoo Z."

On January 23, 2006, Silverlit obtained the copyright
registration for the design of the Picoo Z helicopter and on
December 20, 2006, Silverlit obtained the copyright registration
for the Picoo Z instruction manual and packaging.  On June 27,
2006, Silverlit applied to the Patent and Trademark Office for
registration of the word mark "Picoo Z."  That application is still
pending.

Defendant Absolute Toy Marketing is a Utah corporation that
operates a retail and wholesale website, HobbyTron.com, which sells
toys, including remote control toys.  Defendant Royer is the
president and owner of Absolute Toy Marketing and registrant of the
domain name HobbyTron.com.  The parties dispute Defendant Gibson's
role at Absolute Toy Marketing.  Plaintiffs allege that Gibson is
the founder and CEO of HobbyTron, citing various news and trade
documents that identify him as CEO.  Defendants counter that Gibson

2

was the founder and CEO of Gibson Tech Ed, Inc. (Gibson Tech), a company that also did business as HobbyTron, but that Defendants allege went out of business in February, 2006.  Defendants acknowledge that Absolute Toy Marketing purchased a portion of Gibson Tech's assets at a public auction, but do not explain when or how Absolute Toy Marketing came to do business as HobbyTron or when it took control of the HobbyTron website.  Defendants identify Gibson as "an employee" of Absolute Toy Marketing but do not state what his role is at the company.

During 2006, Silverlit promoted the Picoo Z Helicopter at trade shows and in various trade magazine and newspaper advertisements.  The Picoo Z was recognized by the Guinness Book of World Records as the world's smallest commercial remote control helicopter.  Plaintiffs describe the Picoo Z as "a highly desired toy by consumers and retailers alike."  Plaintiffs' Motion for Preliminary Injunction at 4.  Silverlit states that it has sold nearly 600,000 units of the Picoo Z helicopter, of which 81,916 units were shipped to the United States through November, 2006. Silverlit recently entered into a license agreement with Plaintiff Spin Master, granting Spin Master a trademark and copyright license to distribute the Picoo Z helicopter in Canada, Mexico and the United States.

Among the Picoo Z helicopters Plaintiffs shipped to the United States were approximately 10,750 units, sold to Defendant Absolute Toy Marketing.  Pursuant to Absolute Toy Marketing's instructions, the helicopters were shipped to a company called World Trading, located in North Hollywood, California.

3

United States District Court
For the Northern District of California

1    Plaintiffs allege that in early December, 2006, they

2   discovered that Defendants were marketing and distributing to

3   customers around the United States, including California, remote

4   control toy helicopters called the "Pico Z" and "Picco Z" in

5   packaging similar to Silverlit's Picoo Z packaging.  Plaintiffs

6   conducted an investigation, ordering the products from the

7   HobbyTron website and comparing them to the Picoo Z products.

8   Plaintiffs have also received complaints from consumers who bought

9   the allegedly infringing products from the HobbyTron website and

10   were disappointed with the product.

11    Plaintiffs further allege that "Defendants have gone to great

12   lengths to fool consumers into falsely believing that the

13   Infringing Products that HobbyTron is selling are genuine Silverlit

14   Picoo Z Helicopters."  Plaintiffs' Motion for Preliminary

15   Injunction at 6.  They allege that the helicopter, packaging and

16   instruction manual "are exact copies of, or confusingly similar to,

17   the Silverlit Picoo Z" and that HobbyTron displays images of the

18   Silverlit Picoo Z, not of the allegedly infringing products, on its

19   website.  Plaintiffs also cite a December, 2006 press release that

20   states that "one month before Christmas, HobbyTron.com is the only

21   major source of the Picco Z Mini RC Helicopter in the United

22   States."  Kim Declaration in Support of Plaintiffs' Motion for

23   Preliminary Injunction, Ex. W.  The press release goes on to quote

24   Defendant Royer as stating, "Once you've played with the Picco Z RC

25   helicopter, you immediately understand why they're flying out of

26   Internet retailers and off store shelves the way they are--they're

27   incredibly fun. . . . We're happy to report that although the Picco

28                                      4

Z is sold out at Radio Shack, Toys 'R' Us and others, we still have tens of thousands available for holiday shoppers." Id. Plaintiffs allege that the Defendants intended to mislead consumers into believing that Picoo Z's were being offered for sale, when it was Defendants' allegedly inferior product that was actually offered.

On December 19, 2006, Plaintiffs' counsel sent a cease and desist letter to HobbyTron regarding the sale of these products. Defendants have not responded to the letter.

On December 29, 2006, Plaintiffs filed this lawsuit, alleging claims for (1) copyright infringement; (2) contributory copyright infringement; (3) vicarious copyright infringement; (4) trademark infringement; (5) unfair competition and false designation of origin; (6) common law trademark and trade name infringement; (7) unfair competition under California Business and Professions Code §§ 1720, et seq.; and (8) common law passing off and disparagement.

On January 5, 2007, Plaintiffs moved for a preliminary injunction. On January 19, 2007, Defendants moved to transfer the case to the District of Utah or in the alternative to dismiss the claims against Defendants Gibson and Royer based on a lack of personal jurisdiction. Defendants also seek to stay Plaintiffs' motion for preliminary injunction pending the resolution of the motion to transfer. The Court considers both parties' motions simultaneously.

LEGAL STANDARDS

I.  Preliminary Injunction

To obtain a preliminary injunction, the moving party must establish either: (1) a combination of probable success on the

5

merits and the possibility of irreparable harm, or (2) that serious questions regarding the merits exist and the balance of hardships tips sharply in the moving party's favor.  Rodeo Collection, Ltd. v. West Seventh, 812 F.2d 1215, 1217 (9th Cir. 1987).

The test is a "continuum in which the required showing of harm varies inversely with the required showing of meritoriousness." Id. (quoting San Diego Comm. Against Registration & the Draft v. Governing Bd. of Grossmont Union High Sch. Dist., 790 F.2d 1471, 1473 n.3 (9th Cir. 1986)).  The moving party ordinarily must show "a significant threat of irreparable injury," although there is "a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases," United States v. Odessa Union Warehouse Co-op, 833 F.2d 172, 174, 175 (9th Cir. 1987), and vice versa.  To overcome a weak showing of merit, a plaintiff seeking a preliminary injunction must make a very strong showing that the balance of hardships is in its favor.  Rodeo Collection, 812 F.2d at 1217.

II.  Motion to Dismiss

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move to dismiss for lack of personal jurisdiction. The plaintiff then bears the burden of demonstrating that jurisdiction exists.  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004).  The plaintiff "need only demonstrate facts that if true would support jurisdiction over the defendant."  Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995); Fields v. Sedgwick Assoc. Risks, Ltd., 796 F.2d 299, 301 (9th Cir. 1986).  Uncontroverted allegations in the complaint must be taken

United States District Court

For the Northern District of California

6

as true.  <u>AT&T v. Compagnie Bruxelles Lambert</u>, 94 F.3d 586, 588 (9th Cir. 1996).  However, the court may not assume the truth of such allegations if they are contradicted by affidavit.  <u>Data Disc, Inc. v. Systems Technology Associates, Inc.</u>, 557 F.2d 1280, 1284 (9th Cir. 1977).  Conflicts in the evidence must be resolved in the plaintiff's favor.  <u>AT&T</u>, 94 F.3d at 588.

If material facts are controverted or if the evidence is inadequate, a court may permit discovery to aid in determining whether personal jurisdiction exists.  <u>Data Disc, Inc.</u>, 557 F.2d at 1285 n.1.  If the submitted materials raise issues of credibility or disputed questions of fact, the district court has the discretion to hold an evidentiary hearing in order to resolve the contested issues.  <u>Id.</u>

There are two independent limitations on a court's power to exercise personal jurisdiction over a non-resident defendant: the applicable State personal jurisdiction rule and constitutional principles of due process.  <u>Sher v. Johnson</u>, 911 F.2d 1357, 1361 (9th Cir. 1990); <u>Data Disc, Inc</u>, 557 F.2d at 1286.  California's jurisdictional statute is co-extensive with federal due process requirements; therefore, jurisdictional inquiries under State law and federal due process standards merge into one analysis.  <u>Rano v. Sipa Press, Inc.</u>, 987 F.2d 580, 587 (9th Cir. 1993).

The exercise of jurisdiction over a non-resident defendant violates the protections created by the due process clause unless the defendant has "minimum contacts" with the forum State so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice."  <u>International Shoe Co. v.</u>

United States District Court
For the Northern District of California

7

Washington, 326 U.S. 310, 316 (1945).  Personal jurisdiction may be either general or specific.  Plaintiffs allege that the Court has specific jurisdiction over Defendants Gibson and Royer.

Specific jurisdiction exists where the cause of action arises out of or relates to the defendant's activities within the forum. Data Disc, Inc, 557 F.2d at 1286.  Specific jurisdiction is analyzed using a three-prong test: (1) the non-resident defendant must purposefully direct its activities or consummate some transaction with the forum or a resident thereof; or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable.  Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987).  Each of these conditions is required for asserting jurisdiction.  Insurance Co. of N. Am. v. Marina Salina Cruz, 649 F.2d 1266, 1270 (9th Cir. 1981).

A showing that a defendant "purposefully availed" itself of the privilege of doing business in a forum State typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there.  Schwarzenegger, 374 F.3d at 802.  The requirement of purposeful availment ensures that the defendant should reasonably anticipate being haled into the forum state court based on its contacts.  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).  The purposeful availment test is met where "the defendant has taken deliberate action within the

8

United States District Court
For the Northern District of California

forum state or if he has created continuing obligations to forum

residents." <u>Ballard</u>, 65 F.3d at 1498.

A showing that a defendant "purposefully directed" its conduct toward a forum state "usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." <u>Schwarzenegger</u>, 374 F.3d at 803. Purposeful direction may be established under the "effects test" where the defendant (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. <u>Dole Food Co. v. Watts</u>, 303 F.3d 1104, 1111 (9th Cir. 2002).

The second factor requires that the claim arise out of or result from the defendant's forum-related activities. A claim arises out of a defendant's conduct if the claim would not have arisen "but for" the defendant's forum-related contacts. <u>Panavision Int'l v. L.P.v. Toeppa</u>, 141 F.3d 1316, 1322 (9th Cir. 1998).

Once the plaintiff has satisfied the first two factors, the defendant bears the burden of overcoming a presumption that jurisdiction is reasonable by presenting a compelling case that specific jurisdiction would be unreasonable. <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472-73 (1985); <u>Haisten v. Grass Valley Medical Fund, Ltd.</u>, 784 F.2d 1392, 1397 (9th Cir. 1986). Seven factors are considered in assessing whether the exercise of jurisdiction over a non-resident defendant is reasonable: (1) the extent of the defendant's purposeful interjection into the forum

State's affairs, (2) the burden on the defendant, (3) conflicts of law between the forum State and the defendant's home jurisdiction, (4) the forum State's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the dispute, (6) the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.  <u>Caruth v. International Psychoanalytical Ass'n</u>, 59 F.3d 126, 128 (9th Cir. 1995); <u>Roth v. Garcia Marquez</u>, 942 F.2d 617, 623 (9th Cir. 1991).

III. Motion to Transfer

Title 28 U.S.C. § 1404(a) provides as follows: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Plaintiffs do not dispute that this case could have been brought in the District of Utah.  Thus, the Court need only consider the convenience of the parties and witnesses and the interest of justice.

The statute identifies three basic factors for district courts to consider in determining whether a case should be transferred: (1) convenience of the parties; (2) convenience of the witnesses; and (3) the interests of justice.  28 U.S.C. § 1404(a).  The Ninth Circuit provides other factors the court may consider: ease of access to the evidence; familiarity of each forum with the applicable law; feasability of consolidation of other claims; any local interest in the controversy; relative court congestion and time of trial in each forum; location where the relevant agreements were negotiated and executed; the parties' contacts with forum; difference in the costs of litigation in the two forums; and

10

availability of compulsory process to compel attendance of unwilling non-party witnesses.  Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986); Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000).  Another factor the Ninth Circuit has identified is the plaintiff's choice of forum.  See Securities Investor Protection Corp. v. Vigman, 764 F.2d 1309, 1317 (9th Cir. 1985).  The Securities Investor court held that, unless the balance of the § 1404(a) factors "is strongly in favor of the defendants, the plaintiff's choice of forum should rarely be disturbed."  Id.; see also Decker Coal, 805 F.2d at 843 ("defendant must make a strong showing . . . to warrant upsetting the plaintiff's choice of forum").

The burden is on the defendant to show that the convenience of parties and witnesses and the interest of justice require transfer to another district.  See Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir. 1979).

DISCUSSION

I.   Preliminary Injunction

In copyright infringement, trademark infringement and unfair competition cases, a reasonable showing of likelihood of success on the merits raises a presumption of irreparable harm.  LGS Architects, Inc. v. Concordia Homes, 434 F.3d 1150, 1155-56 (9th Cir. 2006); Vision Sports, Inc. v. Melville Corp., 888 F.2d 609, 612 n.3 (9th Cir. 1989).  Plaintiffs argue that they are likely to succeed on the merits of their copyright infringement claims, Lanham Act claims and common law claims of unfair competition and that preliminary injunctive relief should therefore be granted.

**United States District Court**
For the Northern District of California

1   Without disputing Plaintiffs' primary assertion that

2   Defendants are marketing and selling a product remarkably similar

3   to Plaintiffs' Picoo Z, Defendants attempt to argue that an

4   injunction is improper because Plaintiffs are unlikely to succeed

5   on the merits of their claims.

6       A.   Copyright Claims

7       To establish a claim of copyright infringement a plaintiff

8   must demonstrate (1) ownership of the copyrights, and (2) copying

9   of an expression protected by those copyrights.  <u>Triad Systems</u>

10  <u>Corp. v. Southeastern Express Co.</u>, 64 F.3d 1330, 1335 (9th Cir.

11  1995).

12      Plaintiffs have produced certificates of registration for the

13  design, instruction manual and packaging of the Picoo Z helicopter.

14  <u>See</u> Kim Declaration in Support of Motion for Preliminary

15  Injunction, Exhibits K, L, and M.[1]  Under 17 U.S.C. § 410(c), "the

16  certificate of a registration made before or within five years

17  after first publication of the work shall constitute prima facie

18  evidence of the validity of the copyright and of the facts stated

19  in the certificate."

20      In order to prove copying of the expression protected by the

21  copyrights, Plaintiffs must demonstrate (1) that Defendants had

22  access to the Picoo Z helicopter, manual and packaging and (2) that

23  the works are substantially similar.  <u>Funky Films, Inc. v. Time</u>

24  _____

25      [1]The Court notes that the copyright for the helicopter itself
    is entitled "X-Rotor Hummingbird" rather than Picoo Z.  Plaintiff
26  states that it marketed the Picoo Z as the Hummingbird outside of
    the United States before introducing the Picoo Z in the United
27  States.  The copyright certificates for the instructions and
    packaging are entitled "Picoo Z."

28                                  12

United States District Court
For the Northern District of California

1  <u>Warner Entm't Co., L.P.</u>, 462 F.3d 1072, 1076 (9th Cir. 2006).  It

2  cannot be disputed that Defendants had access to the helicopter,

3  manual and packaging, because both parties agree that Plaintiffs

4  shipped approximately 10,000 units to Defendants in 2006.  To

5  establish that the works are substantially similar, Plaintiffs must

6  meet a two part test, establishing that the products are both

7  extrinsically and intrinsically similar.  <u>Id.</u>  "The 'extrinsic

8  test' is an objective comparison of specific expressive elements"

9  while the "'intrinsic test' is a subjective comparison that focuses

10 on 'whether the ordinary, reasonable audience' would find the works

11 substantially similar in the 'total concept and feel of the

12 works.'"  <u>Cavalier v. Random House, Inc.</u>, 297 F.3d 815, 822 (9th

13 Cir. 2002).  The Court finds that Plaintiffs have met both elements

14 of this test.  The products are objectively almost identical.  The

15 helicopters are the same shape and bear many of the same designs.

16 The instruction manuals are virtually identical to one another,

17 including typographical errors.  The only differences between the

18 two manuals are that Defendants' manual does not include the

19 Silverlit name and contact information and calls the helicopter the

20 "Pico Z" or "Rider" instead of the "Picoo Z."  Finally, the

21 packaging is identical in shape and size and both bear the same

22 stylized letter "z" in the name of the helicopter.  Further, the

23 text on Defendants' packaging is virtually identical to the text on

24 Plaintiffs' packaging.

25     Defendants do not dispute Plaintiffs' allegations that their

26 packaging infringes Silverlit's copyright.  Further, Defendants do

27 not dispute that their product is virtually identical to

28                                    13

United States District Court
For the Northern District of California

Plaintiffs'.  Instead, Defendants argue that the helicopter is a "useful article" that can be denied copyright protection and therefore that Plaintiffs' helicopter and instruction manual copyrights are invalid.  See 17 U.S.C. § 101.  Plaintiffs counter by citing cases finding that "toys are not useful articles; therefore toys may be copyrighted."  Kikker 5150 v. Kikker 5150 USA, LLC, 2004 U.S. Dist. LEXIS 16859, *18 (N.D. Cal. 2004). Defendants respond that the helicopter is not merely a toy but has "an 'intrinsic utilitarian function' which is flying in a stable manner, flying in a controlled manner, flying for 'over 6 minutes,' flying indoors, actively simulating a larger helicopter and providing user with a realistic experience of flying an actual helicopter."  Defendants' Opposition to Motion for Preliminary Injunction at 14.  An Illinois court rejected a similar argument, finding that a flying saucer toy was not a useful article simply because it could fly.  Spinmaster Ltd. v. Overbreak LLC, 404 F. Supp. 2d 1097, 1103-04 (N.D. Ill. 2005).  The Illinois court found that the defendant "incorrectly tries to equate the purpose of [the toy] with an aspect of its design.  Its method of flight is certainly part of the draw of the toy, and one of the qualities that makes playing with it unique, but it is quite clear that the [toy] is designed to portray a flying saucer.  The flight is only one part of that portrayal."  Id.

Similarly, the Court finds that the Picoo Z is a toy that is meant to portray a helicopter and that it is not a "useful article."  See 17 U.S.C. § 101 (defining useful article as "an article having an intrinsic utilitarian function that is not merely

14

to portray the appearance of the article").  The Court finds that Plaintiffs have made a reasonable showing that they will be successful on the merits of their copyright infringement claims.

B.   Trademark Claims

Plaintiffs also allege trademark claims under the Lanham Act and the common law for unfair competition.  "The 'ultimate test' for unfair competition is exactly the same as for trademark infringement: 'whether the public is likely to be deceived or confused by the similarity of the marks.'"  Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1178 (9th Cir. 1988) (quoting New West Corp. v. NYM Co. of California, 595 F.2d 1194, 1201 (9th Cir. 1979)).

The Ninth Circuit has identified eight factors that are relevant to whether consumers are likely to confuse related goods: (1) strength of the mark, (2) proximity of the goods, (3) similarity of the marks, (4) evidence of actual confusion, (5) marketing channels used, (6) degree of care likely to be exercised by the purchaser, (7) evidence of bad faith intent in selecting the mark, and (8) likelihood of expansion and overlap of the products.  AMF, Inc. v. Sleekcraft, 599 F.2d 341, 348-49 (9th Cir. 1979).  Because each of these factors is not necessarily relevant in every case, the list of factors functions as a guide and is neither exhaustive nor conclusive.  Metro Pub., Ltd. v. San Jose Mercury News, 987 F.2d 637, 640 (9th Cir. 1993).  In fact, the Ninth Circuit has warned against "excessive rigidity" in applying the factors and noted that "it is often possible to reach a conclusion with respect to likelihood of confusion after

15

considering only a subset of the factors." <u>Brookfield Communications, Inc. v. West Coast Entertainment Corp.</u>, 174 F.3d 1036, 1054 (9th Cir. 1999); <u>see also Eclipse Associates Limited v. Data General Corp.</u>, 894 F.2d 1114, 1118 (9th Cir. 1990) (<u>Sleekcraft</u> factors "were not meant to be requirements or hoops that a district court need jump through to make a determination"); <u>Murray v. Cable National Broadcasting Co.</u>, 86 F.3d 858 (9th Cir. 1996) (finding no likelihood of confusion after abbreviated <u>Sleekcraft</u> analysis).

The Court finds that Plaintiff has demonstrated a likelihood of confusion based on these factors. As discussed above, the products being sold are remarkably similar. Further, Defendants' choice of name for its product, "Pico Z," is similar to Plaintiffs' Picoo Z name. Both products are sold over the internet, and Plaintiffs have provided evidence that Defendants are intentionally confusing customers. For example, as discussed above, Defendants issued a press release that likely would lead a consumer to believe that Defendants' Pico Z was in fact Plaintiffs' Picoo Z. Further, Plaintiffs provide evidence of multiple consumers who bought Defendants' product believing it was Plaintiffs'.

Defendants do not dispute that there is a likelihood of confusion between the Pico Z name and the Picoo Z name. Instead, they argue that Plaintiffs' decision to market the helicopter as the "Havoc Heli" in the United States eliminates any possibility of confusion. However, Defendants argument fails for two reasons. First, Defendants fail to acknowledge that Plaintiff only changed the name of its product as a result of infringing activity by

United States District Court
For the Northern District of California

others, including Defendants.[2]  Further, Defendants do not acknowledge that Plaintiffs continue to market the helicopter as the Picoo Z outside of the United States, that Plaintiffs continue to offer the Picoo Z for sale on their website or that there is a significant aftermarket for the Picoo Z on auction websites such as eBay.

The Court finds that Plaintiffs have made a reasonable showing that they will be successful on the merits of their trademark claims.

C.   Scope of the Injunctive Relief

Plaintiffs seek an order enjoining Defendants from continuing to market and sell the allegedly infringing products and from utilizing Plaintiffs' copyrighted materials.  The Court finds that the scope of the proposed relief is appropriate. However, Plaintiffs also seek the impoundment and destruction of all allegedly infringing helicopters, instruction manuals, packaging, promotional materials and the tools used to produce them.  The Court finds that destruction of the allegedly infringing materials is inappropriate pending the outcome of the litigation.

D.   Bond

Plaintiffs request that the Court not require them to post a bond, arguing that there is no likelihood that Defendants will be harmed by being enjoined from their unlawful conduct.  Defendants counter that "the bond should be no less than $1,000,000," arguing

---

[2]Defendants suggest that Plaintiffs changed the name of the toy because of another company's prior use of a similar name for a toy helicopter.  However, as Plaintiffs point out, Defendants do not provide any evidentiary support for this contention.

United States District Court
For the Northern District of California

that Plaintiffs have not shown that their conduct is unlawful.
Defendants' Opposition to Motion to Dismiss at 22.   The Court will
require Plaintiffs to post a $1,000 bond.

II.   Motion to Dismiss

    Defendants concede that Absolute Toy Marketing's sale of the
allegedly infringing products in California subjects it to specific
jurisdiction in the State but argue that the Court lacks personal
jurisdiction over Gibson and Royer because they do not have the
constitutionally required minimum contacts with the State.
Plaintiffs counter that both of the individual Defendants have
sufficient power within Absolute Toy Marketing to be held
personally liable for the actions of the company, and that they
should therefore be subject to personal jurisdiction.   Defendants
do not dispute that an individual who "is the moving, active
conscious force behind the infringing activity" would be subject to
jurisdiction in this case.   Babbit Electronics, Inc. v. Dynascan
Corp., 828 F. Supp. 944 (S.D. Fla. 1993), aff'd 38 F.3d 1161 (11th
Cir. 1994).   Instead, Defendants argue that the individual
Defendants did not actually exercise sufficient control over
Absolute Toy Marketing's decisions with respect to the allegedly
infringing products to subject them to the Court's jurisdiction.

    A.   Defendant Tim Gibson

    As mentioned above, Defendants state that Gibson is an
"employee" of Absolute Toy Marketing, but do not elaborate on his
role at the company.   However, Plaintiffs have provided evidence
that Gibson is a manager in the company, capable of exercising
sufficient control to subject him to jurisdiction.   For example,

18

**United States District Court**
For the Northern District of California

Plaintiffs note that Gibson is listed second, below Defendant Royer, the company's president, on the list of "Company Management" included on the "HobbyTron.com Company Fact Sheet" published in November, 2006.  Kim Declaration in Support of Plaintiffs' Opposition to Motion to Transfer, Ex. J.

Instead of providing affirmative evidence of Gibson's role at Absolute Toy Marketing that demonstrates that he did not take part in the decision to market and sell the allegedly infringing products, Defendants attempt to point out technical problems with Plaintiffs' evidence.  For example, Defendants point out that most of the articles that state that Gibson was the founder or CEO of HobbyTron pre-dated Absolute Toy Marketing.  While this eliminates those articles as evidence of Gibson's role at Absolute Toy Marketing, it does not negate the evidence that he was part of the "Company Management" as of November, 2006.  Further, Defendants do not provide any evidence related to the transfer of the HobbyTron website from Gibson Tech, the company that Gibson did create, to Absolute Toy Marketing.

Because Defendants have not provided any evidence or affidavits to contradict the evidence produced by Plaintiffs and the allegations in the complaint, and because the Court resolves conflicts in the evidence in Plaintiffs' favor, it denies Defendants' motion to dismiss the claims against Gibson for lack of personal jurisdiction.  AT&T, 94 F.3d at 588.

B.   Defendant Jim Royer

Defendants admit that Defendant Royer is the president and owner of Absolute Toy Marketing but deny that there is sufficient

19

**United States District Court**
For the Northern District of California

evidence to establish that he was involved in decisions related to the infringing products.  Plaintiffs allege that, in addition to Royer's title and ownership interest in the company, the misleading statements Royer made regarding the sale of Absolute Toy Marketing's "Picco Z" helicopter in a press release demonstrate his involvement in the marketing and sale of the infringing products. Further, Royer is the owner of the HobbyTron.com website, through which the allegedly infringing products were sold.  Again, Defendants do not provide affirmative evidence that Royer was not involved in the marketing and sale of the allegedly infringing product but seek to undermine the evidence that Plaintiffs present.

Defendants argue that knowledge of the company's sale of the allegedly infringing product is insufficient to establish a claim against Royer and therefore is insufficient to establish specific jurisdiction.  However, Plaintiffs' evidence shows more than knowledge of the sale of the allegedly infringing product.  Here, Royer's knowingly misleading statements are enough to establish that he was a moving active force behind the alleged infringement even if he was unaware that his actions were improper.  See, e.g., Bambu Sales, Inc. v. Sultana Crackers, Inc., 683 F. Supp. 899, 913-14 (E.D.N.Y. 1988) (holding liable a corporate officer who was unaware his acts would result in trademark infringement); Playboy Enterprises, Inc. v. Starware Publishing Corp., 900 F. Supp. 438, 441-42 (S.D. Fla. 1995) (same for copyright infringement).

II.  Motion to Transfer

Defendants move to transfer this case to the District of Utah on several grounds.  First Defendants note that neither of the

20

Plaintiffs resides in this district.  Second, Defendants argue that most of the witnesses and evidence is located in Utah.  Next, Defendants argue that the convenience of the parties weighs in favor of transfer.  Finally, Defendants argue that Utah has a particular interest in the resolution of this case.  Plaintiffs disagree that Defendants have met their burden of showing that the convenience of parties and witnesses and the interest of justice require transfer.

A.   Plaintiffs' Choice of Forum

Although courts typically give a plaintiff's choice of forum great deference unless the defendant can show that other factors of convenience clearly outweigh the plaintiff's choice, there are factors that diminish the deference typically afforded.  <u>Decker Coal</u>, 805 F.2d at 843; <u>Securities Investor</u>, 764 F.2d at 1317.  For example, "in contrast to the strong presumption in favor of a domestic plaintiff's forum choice, 'a foreign plaintiff's choice deserves less deference.'"  <u>Ravelo Monegro v. Rosa</u>, 211 F.3d 509, 513 (9th Cir. 2000) (<u>quoting</u> <u>Piper Aircraft v. Reyno</u>, 454 U.S. 235, 256 (1981)).  "[T]he degree to which courts defer to the plaintiff's chosen venue is substantially reduced where the plaintiff does not reside in the venue or where the forum lacks a significant connection to the activities alleged in the complaint."  <u>Williams v. Bowman</u>, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001).

Here Plaintiffs do not reside in the district.  While the Court gives some weight to Plaintiffs' choice of forum, the ordinary deference afforded is diminished.  This factor weighs slightly against transfer.

**United States District Court**
For the Northern District of California

B.   Convenience of the Witnesses and Access to Evidence

Defendants identify over fifteen witnesses who reside in Utah: eleven Absolute Toy Marketing employees and several third party witnesses, including an unidentified group of FedEx and UPS employees who "have knowledge of the shipment of the alleged infringing mini-helicopters."  Defendants' Motion to Transfer at 9. The Court discounts the inconvenience to Defendants' employees, whom Defendants can compel to testify.  STX, Inc. v. Trik Stik, Inc., 708 F. Supp. 1551, 1556 (N.D. Cal. 1988).  Further, it is not clear that the witnesses Defendants identify would be called upon to testify in this case.  As Plaintiffs point out, their claims do not involve "a low-level employee's physical act of packing a toy in a cardboard box, or a UPS employee's act of delivering that box to a consumer."  Plaintiffs' Opposition to Motion to Transfer at 16.

Plaintiffs do not identify any witnesses that they intend to call, stating only that they "may be required to involve foreign witnesses to establish their claims" and that if they do so, San Francisco is more convenient for those traveling from Asia. Defendants counter that there are direct flights from Asia to the Salt Lake City Airport, and that the relative increase in expense is minimal for Plaintiffs if the case is transferred to Utah while the potential savings for Defendants are great.

The Ninth Circuit has held that "the location of the evidence and witnesses . . . is no longer weighed heavily given the modern advances in communication and transportation."  Panavision Int'l L.P. v. Toeppen, 141 F.3d 1316, 1323 (9th Cir. 1998).  The Court

22

**United States District Court**
For the Northern District of California

1    finds this factor to weigh slightly in favor of transfer.

2         C.   Convenience to Parties

3         Defendants argue that it will be very inconvenient for them to

4    litigate this matter in this district, but that transfer to Utah

5    will not increase any inconvenience to Plaintiffs.  First, they

6    argue that Absolute Toy Marketing is a small company with only

7    twenty-five employees and that its yearly sales of $8 million are

8    very small, relative to Plaintiff Silverlit's yearly sales of $80

9    million and Plaintiff Spin Master's yearly sales of $300 million.

10   Therefore, Defendants argue that the burden of traveling to

11   California to litigate would be much higher for them than for

12   Plaintiffs to travel to Utah.  Defendants note that a larger

13   percentage of their staff would be absent from their home offices

14   during litigation and that their travel expenses would be

15   disproportionately high.

16        In contrast, Defendants point out that Plaintiffs' witnesses

17   will already be traveling to the United States from Hong Kong or

18   Canada whether the litigation is in California or Utah.  Defendants

19   also point out that the Salt Lake City airport has direct flights

20   to both Ontario, Canada and Hong Kong.  Therefore any additional

21   inconvenience or cost associated with litigating in Utah rather

22   than California would be minimal for Plaintiffs.  The Court finds

23   that the additional inconvenience to Plaintiffs if transfer is

24   granted will be less than the inconvenience to Defendants of

25   litigating in California.  This factor weighs in favor of transfer.

26        D.   Utah's Interest in the Resolution of the Case

27        Another consideration in deciding a motion to transfer is the

28                                   23

interest in having localized controversies decided in the district where they occur.  See Gulf Oil Co. v. Gilbert, 330 U.S. 501, 508 (1947).  Defendants argue that the District of Utah has a greater local interest in deciding this case because Defendants are incorporated under the laws of that State and are located there.

Plaintiffs counter that California has a strong interest in adjudicating the dispute because of "Defendants' improper sales and advertising activities directed at California customers." Plaintiffs' Opposition to Motion to Transfer at 15.  Therefore, Plaintiffs note that "California maintains a strong interest in 'protecting its citizens from the willful acts of nonresident defendants.'"  Io Group v. Pivotal, Inc., 2004 U.S. Dist. LEXIS 6673, *15 (N.D. Cal. 2004) (quoting Figi Graphics, Inc. v. Dollar General Corp., 33 F. Supp. 2d. 1263, 1268 (S.D. Cal. 1998)). However, the cases Plaintiffs cite discuss California courts' exercise of jurisdiction over foreign defendants in cases brought by California residents.

As with many cases involving the internet, no jurisdiction has a particularly strong connection to this case.  The marketing and sale of goods over the internet occurred on a national scale. Therefore, the alleged injury occurred wherever a consumer bought a product.

Defendants also argue that the contract for the sale of the original 10,000 helicopters from Silverlit to HobbyTron was made pursuant to Utah law.  However, it is not clear how the terms of the sales agreement is relevant to Plaintiffs' claims.

Finally, Plaintiffs argue that a Utah court will be less

24

United States District Court
For the Northern District of California

1  efficient in deciding the California statutory and common law

2  claims that they allege along with their federal copyright and

3  trademark infringement claims.

4       Because internet cases affect all jurisdictions, Utah law is

5  not applicable in this case and California law is relevant to

6  Plaintiffs' claims, this factor weighs slightly against transfer.

7       E.   Interests of Justice

8       The interests of justice and judicial efficiency weigh against

9  transfer because Defendants' blatant copying has required this

10 Court to familiarize itself early with the case on a motion for

11 preliminary injunction.  It would be inefficient to require a judge

12 in Utah to duplicate this effort.

13      F.   Balancing of Factors

14      On balance, the factors weigh against transfer.  The Court

15 denies Defendants' motion because they fail to meet their burden of

16 establishing that the convenience of the parties and witness and

17 the interest of justice require transfer to Utah.

18                          CONCLUSION

19      The Court GRANTS in part Plaintiffs' motion for a preliminary

20 injunction (Docket No. 4).  The injunction has entered as a

21 separate order.  The Court DENIES Defendants' motion to transfer or

22 dismiss (Docket No. 34).

23      IT IS SO ORDERED.

24           2/15/07

25 Dated:_____        _____
                                        CLAUDIA WILKEN
26                                      UNITED STATES DISTRICT JUDGE

27

28                          25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

26